UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| IPFS CORPORATION, a Missouri Corporation, | ) ) ) |
| Plaintiff, | ) ) Case No.: 2:14–cv–00509–GMN–GWF |
| vs. | ) ) **ORDER** |
| LORRAINE CARRILLO, an individual, | ) ) |
| Defendant. | ) ) |

Pending before the Court is the Motion for Preliminary Injunction (ECF No. 10) filed by Plaintiff IPFS Corporation ("Plaintiff") against Defendant Lorraine Carrillo ("Defendant"). Defendant filed a Response (ECF No. 19), and Plaintiff filed a Reply (ECF No. 20).

**I.  BACKGROUND**

Defendant is a former employee of Plaintiff, a premium financing company. (Compl. ¶ 6, ECF No. 1.)  In 1993, she entered into a non-compete agreement (the "Agreement") with Plaintiff, which prohibited her from doing business with Plaintiff's customers, both during her employment and for eighteen months thereafter. (*Id.* ¶¶ 7, 9.)  Defendant resigned her Sales Executive position in January 23, 2014, after more than twenty-one years with Plaintiff. (*Id.* ¶¶ 6, 10.)  She is currently an employee of Premium Assignment Corporation ("PAC"), one of Plaintiff's competitors. (*Id.* ¶ 2.)

Plaintiff alleges that, shortly after Defendant's resignation, Defendant began soliciting at least three of Plaintiff's current Nevada-based clients, both of whom she had serviced while in Plaintiff's employ. (Compl. ¶¶ 11–13, ECF No. 1; Pl.'s Emergency Mot. for TRO 2:17–19, ECF No. 2.)  Defendant allegedly continued doing business with these clients, despite written correspondence from Plaintiff ordering her to cease and desist, as well as assurances from PAC

to the contrary. (Compl. ¶¶ 14–15, ECF No. 1.)

Plaintiff's Complaint alleges breach of contract and states that Plaintiff will incur "irreparable harm in the form of lost customer goodwill and lost business" if Defendant is allowed to continue her competitive activities. (*Id.* ¶¶ 17–24.)  Plaintiff accordingly filed an Emergency Motion for Temporary Restraining Order (ECF No. 2) to prevent Defendant from soliciting any of Plaintiff's clients that she had serviced during her employ until July 23, 2015 (eighteen months after the date of her resignation). (Pl.'s Emergency Mot. for TRO 8:3–9, ECF No. 2.)  The Court denied this motion because Plaintiff failed to show that the temporary restraining order should have been granted without notice to Defendant; specifically, Plaintiff failed to mention the requirements of Federal Rule of Civil Procedure 65(b). (Order Denying Pl.'s Mot. for TRO, ECF No. 7.)  Plaintiff subsequently filed the instant Motion for Preliminary Injunction (ECF No. 10).

## II.     LEGAL STANDARD

Rule 65 of the Federal Rules of Civil Procedure provides that a "court may issue a preliminary injunction only on notice to the adverse party." Fed. R. Civ. P. 65(a)(1).  A Court may issue a preliminary injunction only if a plaintiff establishes: (1) likelihood of success on the merits; (2) likelihood of irreparable harm in the absence of preliminary relief; (3) that the balance of equities tips in his favor; and (4) that an injunction is in the public interest. *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008).  "Injunctive relief [is] an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Id*. at 22.  Finally, "[i]n deciding a motion for a preliminary injunction, the district court 'is not bound to decide doubtful and difficult questions of law or disputed questions of fact.'" *Int'l Molders' & Allied Workers' Local Union No. 164 v. Nelson*, 799 F.2d 547, 551 (9th Cir. 1986) (quoting *Dymo Indus., Inc. v. Tapeprinter, Inc.*, 326 F.2d 141, 143 (9th Cir. 1964)).

/ / /

III. **DISCUSSION**

    A.    **Likelihood of Success on the Merits**

        *1.*    *Choice of Law*

The Agreement contains a choice-of-law provision stating that it is governed by Missouri law. (Compl. Ex. A, at 3, ECF No. 1.)  Defendant argues that, despite this provision, the Agreement should be governed by Nevada law. (Def.'s Resp. to Mot. for Prelim. Inj. 12:16–15:26, ECF No. 19.)

"The first step in interpreting [a choice-of-law] clause is to apply the correct choice-of-law rules." *Paracor Fin., Inc. v. Gen. Elec. Capital Corp.*, 96 F.3d 1151, 1164 (9th Cir. 1996).  "In determining the enforceability of a choice of law provision in a diversity action, a federal court applies the choice of law rules of the forum state." *Hatfield v. Halifax PLC*, 564 F.3d 1177, 1182 (9th Cir. 2009).  Nevada generally follows the Restatement (Second) of Conflict of Laws in answering choice-of-law questions that arise in contracts. *Progressive Gulf Ins. Co. v. Faehnrich*, 752 F.3d 746, 750–51 (9th Cir. 2014).  "So long as 'the parties acted in good faith and not to evade the law of the real situs of the contract,' Nevada's choice-of-law principles permit parties 'within broad limits to choose the law that will determine the validity and effect of their contract.'" *Id.* at 751 (quoting *Ferdie Sievers & Lake Tahoe Land Co. v. Diversified Mortg. Investors*, 603 P.2d 270, 273 (Nev. 1979)).

However, the situs specified in the contract must have "a substantial relation with the transaction, and the agreement must not be contrary to the public policy of the forum." *Sievers*, 603 P.2d at 273; *see also Siy v. CashCall, Inc.*, No. 2:13-cv-00953-PAL, 2014 WL 37879, at *8 (D. Nev. Jan. 6, 2014) (upholding California choice-of-law provision in employment contract because California "meets the substantial relationship test, and . . . the agreement is not contrary to the public policy of Nevada").  To determine whether a given situs satisfies the substantial relationship test, Nevada considers the following factors from section 188 of the Restatement: (1)

the place of contracting, (2) the place of negotiation of the contract, (3) the place of performance, (4) the location of the subject matter of the contract, and (5) the parties' domicile, residence, nationality, place of incorporation, and place of business. *Sotirakis v. United Serv. Auto. Ass'n*, 787 P.2d 788, 790 (Nev. 1990). A court applies the law of the state having the more substantial relation with the transaction unless public policy concerns outweigh that relation. *Id.*

Here, there is no evidence that, in signing a contract governed by Missouri law, the parties acted in bad faith to avoid the law of any particular state. Given that Plaintiff is incorporated under the laws of Missouri with its principal place of business in Missouri, and conducts business in a number of other states, it is reasonable that Plaintiff would include a Missouri choice-of-law provision in the Agreement. (*See* Compl. ¶ 1, ECF No. 1; Def.'s Resp. 6:2–3, ECF No. 19.) Further, the factors from section 188 of the Restatement do not compel a determination that Nevada has a more substantial relation to this action than Missouri. These factors do not weigh so heavily in favor of Nevada as to preclude the application of Missouri law. *See Sotirakis*, 787 P.2d at 790. Specifically, the parties negotiated and executed the Agreement in both Missouri and Nevada, as Plaintiff in Missouri contacted Defendant in Nevada to recruit her away from her previous employer in 1993. (*See* Resp. 5:27–28, ECF No. 19.) Likewise, the place of performance and location of the subject matter of the contract are both Missouri and Nevada, as Defendant's sales activity in her assigned region of Nevada presumably had an effect on Plaintiff's business in Missouri. (*See id.* 6:1–3.)

Therefore, this Court will apply Missouri law to the Agreement because Nevada gives parties wide latitude in choosing the law they want to apply to their contracts, Defendant assented to a choice of Missouri law by signing the Agreement, and Missouri reasonably has a "substantial relation with the transaction."

### 2.  Merits

The *Winter* test states that in order to show the necessity of injunctive relief, the plaintiff

must first prove a likelihood of success on the merits. 555 U.S. at 20.  Here, the Court recognizes that Plaintiff can show that Defendant violated the Agreement.  However, Plaintiff is unlikely to succeed on its breach-of-contract claim because Defendant will likely show that the Agreement is overbroad and thus unenforceable as written.

The Agreement requires Defendant to refrain from soliciting, for eighteen months, any clients that Plaintiff is doing business with at the time of her termination. (Compl. ¶ 9, ECF No. 1.)  Plaintiff claims that Defendant violated the Agreement because she was "involved in soliciting" customers whom she had serviced while employed by Plaintiff, including Aniello Insurance Agency ("Aniello") and Royle Insurance Agency ("Royle"), before July 23, 2015. (*Id.* ¶ 11–13, 6:¶2(a).)  Plaintiff supports its claim with six emails: the first five between Plaintiff's current employer, PAC, and Aniello, on which Defendant was copied, and the sixth from a Royle employee to Defendant about a business transaction. (*Id.* at Ex. B ("Yunk Aff."), Ex. A, B.)

Although Plaintiff is likely to establish that these communications constitute a breach of the Agreement, Defendant is likely to succeed on her affirmative defense that the Agreement is overbroad and therefore unenforceable. (*See* Resp. 20:5–21:12, ECF No. 19.)  In Missouri, "[b]ecause non-compete agreements are considered to be in restraint of trade, they are presumptively void and enforceable only to the extent that they are demonstrably reasonable." *Orchard Container Corp. v. Orchard*, 601 S.W.2d 299, 303 (Mo. Ct. App. 1980).  That is, they must be "no more restrictive than is necessary to protect the legitimate interests of the employer" and "narrowly tailored geographically and temporally." *Healthcare Servs. of the Ozarks, Inc. v. Copeland*, 198 S.W.3d 604, 610 (Mo. 2006).

The reasonableness of the non-compete agreement's geographical limits "depends upon whether the employer possessed a stock of customers located co-extensively with those geographical limits." *Orchard*, 601 S.W.2d at 303 (reducing agreement's geographical limit from 200 to 125 miles, as employer had customers only within the smaller radius); *see also Cont'l*

*Research Corp. v. Scholz*, 595 S.W.2d 396, 400 (Mo. Ct. App. 1980) (employer had no protectable interests in customer contacts outside employee's assigned territory).  Missouri courts have enforced customer non-solicitation clauses lacking geographical limits only "when other limitations to the prohibited conduct exist or when the employee had significant contact with a substantial number of the employer's customers." *Whelan Sec. Co. v. Kennebrew*, 379 S.W.3d 835, 842 (Mo. 2012).  Similarly, in *Systematic Business Services, Inc. v. Bratten*, the Missouri Court of Appeals enforced a national company's non-solicitation clause prohibiting an employee from contacting all of its customers, because the employee had "substantial and continuing contact" with customers throughout the nation. 162 S.W.3d 41, 51 (Mo. Ct. App. 2005); *see also Nat'l Starch & Chem. Corp. v. Newman*, 577 S.W.2d 99, 104–05 (Mo. Ct. App. 1978) (enforcing a customer non-solicitation clause limited to customers with whom employee and salesmen under his supervision dealt).

      Under Missouri law, the Agreement here is likely too broad to enforce as written because it goes beyond simply protecting Plaintiff's customer contacts and instead places unreasonable limitations on Defendant's ability to work in her field.  The Agreement states that Defendant may not

> directly or indirectly, in any manner or capacity, engage in or have a financial interest in any business carried on by the Employer during the period of Employee's employment, if such business at any time contacts or solicits or attempts to contact or solicit any Customer or Potential Customer with whom Employer is doing business at the time of termination of Employee's employment.

(Compl. Ex. A, at 2.)  The Agreement defines "Potential Customer" as "a Customer which the Employer actively solicits through personal contact or direct correspondence prior to or during Employee's association with the Employer." (*Id.*)  Because of this expansive definition and the absence of geographical limitations, the Agreement effectively prevents Defendant from working for any premium financing company anywhere in the world to whom Plaintiff has sent as much

as a letter. (*See* Resp. 17:22–24, ECF No. 19.)  Although Defendant apparently "maintained substantial customer contacts" during her employment, Plaintiff presents no evidence that Defendant has had "substantial and continuing contact" with customers throughout the nation like the employee in *Systematic*, which would necessitate a non-compete agreement without geographical limits. (*See* Mot. for Prelim. Inj., 7:26, ECF No. 10); *Systematic*, 162 S.W.3d at 51. Rather, Defendant appears to have had significant contact with customers only in Nevada, Utah, and Arizona, and later only Nevada after Plaintiff took away her Utah and Arizona sales territories. (*See* Resp. 25:16–19, ECF No. 19.)

     Recognizing the overbroad nature of the Agreement, Plaintiff requests to limit the application of the Agreement only to a "Restricted List" of 103 of Plaintiff's current customers that Defendant serviced during her employment. (Corrected Reply to Resp. to Mot. for TRO ("Corrected Reply") 18:9–11, ECF No. 14.)  The Missouri Court of Appeals "recognize[s] that an unreasonable restriction against competition in a contract may be modified and enforced to the extent that it is reasonable, regardless of the covenant's form of wording." *Mid-States Paint & Chem. Co. v. Herr*, 746 S.W.2d 613, 616 (Mo. Ct. App. 1988); *see also Whelan*, 379 S.W.3d at 847 (modifying overbroad customer/potential customer non-solicitation clauses to make non-compete agreement enforceable).  True enough, Plaintiff's proposed modification seems reasonable because it narrows the scope of the Agreement to customers that "represent only a small fraction of the potential customers in [Defendant]'s geographic market." (Corrected Reply 6:26–27).  However, Plaintiff presents no case where a Missouri court has modified a non-compete agreement at the preliminary injunction stage.  Therefore, the Court declines to modify the Agreement at this early stage of the litigation and will instead reserve judgment on the issue of modifying the Agreement until after discovery and further motion practice.

     **B.    Likelihood of Irreparable Harm in the Absence of Preliminary Relief**

     Even if the Court were to modify the Agreement at this stage of the litigation, Plaintiff is

still not entitled to the requested relief because Plaintiff has failed to demonstrate that it is likely to suffer irreparable harm without the injunction. To succeed on the second prong of the *Winter* test, the plaintiff must "demonstrate that irreparable injury is *likely* in the absence of an injunction." 555 U.S. at 22 (emphasis in original). In the Ninth Circuit, "[t]hose seeking injunctive relief must proffer evidence sufficient to establish a likelihood of irreparable harm." *Herb Reed Enters., LLC v. Florida Entm't Mgmt., Inc.*, 736 F.3d 1239, 1251 (9th Cir. 2013). A presumption that irreparable harm is likely is not sufficient to justify the granting of a preliminary injunction. *See id.* at 1242.

Here, Plaintiff erroneously applies the more lenient Missouri standard, which requires an employer to show only that there is a threat of irreparable harm, not that actual harm has occurred. *Emerson Elec. Co. v. Rogers*, 418 F.3d 841, 846 (8th Cir. 2005); *see also Osage Glass, Inc. v. Donovan*, 693 S.W.2d 71, 75 (Mo. 1985). Plaintiff's conclusory statements that "irreparable harm is ongoing" and that Defendant is "harming and interfering with [Plaintiff]'s relationships with its customers" are insufficient under the stricter Ninth Circuit standard to establish—rather than presume—a likelihood of irreparable harm. (Mot. for Prelim. Inj. 5:19–25, ECF No. 10.) Further, Plaintiff offers no evidence that "the hearing of the merits of this case will not provide [Plaintiff] complete relief." (*Id.* 5:21–22.) Even under the general Missouri rule that injunctive relief is granted "if the remedy at law is not clear, complete and as practical and efficient to the ends of justice and its prompt administration as the remedy in equity," Plaintiff has not shown that monetary damages would be unclear or inadequate here. *See Maude v. Gen. Motors Corp.*, 626 F. Supp. 1081, 1087 (W.D. Mo. 1986) (quoting *Hughes v. Neely*, 332 S.W.2d 1, 7 (Mo. 1960)). Thus, Plaintiff has failed to establish that injunctive relief is necessary.

### IV.  CONCLUSION

Because Plaintiff has not met its burden of demonstrating either a likelihood of success on the merits or a likelihood of irreparable harm, the Court need not address the balance of equities

and public interest factors.  The Court hereby denies Plaintiff's Motion for Preliminary Injunction, and consequently, Plaintiff's Motion for Temporary Restraining Order is moot.

**IT IS HEREBY ORDERED** that Plaintiff's Motion for Preliminary Injunction (ECF No. 10) is **DENIED**.

**IT IS FURTHER ORDERED** that Plaintiff's Motion for Temporary Restraining Order (ECF No. 9) is **DENIED** as **MOOT**.

**DATED** this 1st day of August, 2014.

_____
Gloria M. Navarro, Chief Judge
United States District Judge