THOMAS G. RYAN (NV Bar No. 9378)
tryan@lrrlaw.com
HOWARD E. COLE (NV Bar No. 4950)
hcole@lrrlaw.com
JENNIFER K. HOSTETLER (NV Bar No. 11994)
jhostetler@lrrlaw.com
LEWIS ROCA ROTHGERBER LLP
3993 Howard Hughes Parkway, Suite 600
Las Vegas, NV 89169
(702) 949-8315 tel
(702) 949-8379 fax

MICHAEL J. ABRAMS
mabrams@lathropgage.com
LATHROP & GAGE LLP
2345 Grand Boulevard, Suite 2200
Kansas City, MO 64108
(816) 292-2000 tel
(816) 292-2001 fax
*Pro Hac Vice* Admitted

*Attorneys For Plaintiff
IPFS Corporation*

**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| IPFS CORPORATION, a Missouri Corporation,<br><br>　　　　　　Plaintiff,<br><br>v.<br><br>LORRAINE CARRILLO, an individual,<br><br>　　　　　　Defendant. | Case No.  2:14-cv-00509-GMN-GWF<br><br>**PLAINTIFF'S SUGGESTIONS IN OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**<br><br>**Oral Argument Requested (LR 78-2)** |

Plaintiff IPFS Corporation ("IPFS"), through counsel, respectfully submits these Suggestions in Opposition to Defendant Lorraine Carrillo's Motion for Summary Judgment.

23317960v1

I. PROCEDURAL BACKGROUND

IPFS moved for partial summary judgment on October 27, 2014 seeking an order that (a) finds Carrillo liable for breach of contract on her employment agreement; (b) modifies the restrictions to promote fairness; (c) immediately enjoins her from further breach; and (d) reserves the issue of damages for trial. IPFS's motion has been fully briefed since December 3, 2014; it is still pending. On December 22, 2014, Carrillo submitted her own motion for summary judgment, Doc. 60. Notably, however, Carrillo's motion for summary judgment raises no new arguments, case law, or evidence not previously advanced in her opposition to IPFS's motion. *Compare* Doc. 60 with Doc. 55. Carrillo's motion apparently abandons several of her more unavailing arguments,[1] but her remaining arguments fare no better. Because most of the issues are the same, only with a slightly different procedural posture, **IPFS incorporates by reference all of its previously submitted evidence and briefing on IPFS's Motion for Partial Summary Judgment, Docs. 44 and 57**. This brief will simply highlight IPFS's responses to Carrillo's remaining arguments.

II. ARGUMENT

A. **IPFS Presented Overwhelming Evidence that IPFS Has a Protectable Interest in the Customers Identified on the Restricted List**

There is ample evidence within the record to demonstrate that IPFS has a protectable interest in its customers, and that the proposed modifications of Carrillo's Agreement are no more restrictive than necessary to protect IPFS's interest. (However, even if more evidence was needed to modify the Agreement, this would be a fact issue precluding summary judgment in favor of Carrillo). Missouri Revised Statute § 431.202.1 confirms that employers, such as IPFS,

---

[1] Carrillo previously criticized the evidentiary basis of the Restricted List, claimed that IPFS's business growth, her changes in territory, and changes in compensation affected the enforceability of the Agreement. She also claimed that the "equities" favored her. These arguments are not raised in Carrillo's affirmative motion. *Compare* Doc. 60 with Doc. 55.

23317960v1                              - 2 -

have a legally protectable interest in their customer relationships. Decades of Missouri case law hold that agreements should be enforced as written or modified to protect these relationships. IPFS asks the Court to enjoin Carrillo with a customer-specific restriction that was approved by the Missouri Supreme Court in *Whelan Sec. Co. v. Kennebrew*, 379 S.W.3d 835, 847 (Mo. 2012). In *Whelan*, the Missouri Supreme Court simply limited the restriction to "those customers with whom [the former employees] dealt." *Id.* IPFS used its best efforts to ascertain IPFS's current customers with whom Carrillo dealt, identified those customers on a "Restricted List," and submitted it with the Complaint. These are IPFS's current customers in a defined territory for whom Carrillo was compensated to service, maintain relationships, assist with any problems, regularly solicit, and for whom she received commissions when the customers facilitated loans through IPFS. *See, e.g.*, Doc. 44-4; Doc. 44-5; and Doc. 55-4, pp. 6; 10-11. It is certainly reasonable to restrict Carrillo from soliciting the actual and current customers that IPFS assigned to her for safekeeping.

Carrillo now oddly tries to minimize her role in earning her commissions, essentially arguing that she did not do the work IPFS paid her to do. However, when pressed at her deposition and asked, "[are] there any agencies on [the Restricted List] that you did not have contact with while you were at IPFS in -- in connection with your duties and responsibilities for IPFS?," Carrillo identified only 5 out of the 103 listed. *See* Doc. 57-2, Carrillo Dep. at 90:12 – 93:16 (listing JPG Insurance, Century One, O'Keefe, Bodenstein, Bill Mitchell). Although Carrillo was paid to service these customers and received compensation for their sales, IPFS does not oppose striking these 5 customers from the Restricted List. Undisputed evidence shows that Carrillo "dealt" with the other 98 customers on the Restricted List and, therefore, enforcement is appropriate under *Whelan*.

Specifically, Carrillo criticizes the Restricted List because it was compiled by ascertaining all the customers that were "coded" to Carrillo supposedly without making an "individualized assessment" of the clients to determine the "'nature, quality, or quantity of contacts.'" SUF, ¶ 11; Doc. 60, pp. 8-9 (quoting *Cont'l Research Corp. v. Scholz*, 595 S.W.2d 396, 401 (Mo. Ct. App. 1980)). Notably, however, *Continental Research* does not suggest that employers must engage in such an "assessment" for each customer. Rather, this case simply affirmed a trial court's refusal to enforce a restrictive covenant *outside* the limits of a former employee's sales territory—the trial court notably upheld the restriction *within* the former employee's territory. *Id.* It is reasonable to find that a salesperson has the requisite nature, quality and quantity of contacts with current customers in her territory to whom she has actually sold.

Carrillo cites no Missouri authority requiring an "individualized assessment" for each customer relationship. Carrillo has identified absolutely no Missouri case law where a court refused to restrict a salesperson from soliciting actual customers in her own territory, on the grounds that the salesperson did not have sufficient contact with her assigned customers. Carrillo's job was to stay in contact with these active customers. She should not be excused from her contractual obligations based on vague statements that the Restricted List contains "certain [unnamed] agencies" that she did not contact during her final 24 months with IPFS, or that she contacted "certain [unnamed] agencies . . . so infrequently that [she] cannot recall when, why, or how [she] did so." Carrillo Decl. ¶¶ 25-26.

Carrillo's reliance on *Easy Returns Midwest, Inc. v. Schultz*, 964 S.W.2d 450, 453-54 (Mo. Ct. App. 1998) is misplaced. In *Easy Returns*, the court reversed summary judgment because the employer failed to provide evidence of the employee's "quality, frequency, or duration" of customer contacts **in 24 states**, wherein the **employer failed to show that it has *any* customers in those same 24 states**. *Id.* In the present case, customers on the Restricted List are

- 4 -

23317960v1

actual and current relationships that Carrillo was paid to contact and service. *Easy Returns* cannot be used to claim that an employer, or the Court, has to investigate every single customer relationship to determine the level of potential loyalty. Such loyalty is a secret of the heart, which is often unknown until the salesperson leaves and the customer follows.

Moreover, conducting an "individualized assessment" was impracticable because Carrillo worked from home and failed to track her activities on IPFS's Customer Relations Management system ("CRM"). "[The CRM is] a management system where the sales executives can log all of their visits to agencies, calls with agencies, we use it to track emails. Anything you know about the agency can be added in there: If they're sensitive to rate, their terms, what other finance companies they might currently be using, technology issues they have, things that we have offered them. It's just kind of a recap of everything in the agency where the sales executive can put it in one spot for everybody to see." *See* Doc. 57-1, Rachel Yunk Dep. at 36:5-14. However, after Carrillo's departure, IPFS learned that Carrillo did not use the CRM to track her contacts with her customers. *Id.* at 41:1-15. IPFS should not be penalized for not conducting an "individualized assessment," when none is required by law, and because Carrillo failed to catalog her customer contacts on the CRM system, it would have been unreasonable to do so. Following *Whelan*, IPFS utilized its best efforts to identify the customers with whom Carrillo dealt. This is sufficient under Missouri law.

It is no surprise that Carrillo has not proposed any alternative restrictions—she took her closest and most recent customer relationships with her to IPFS's competitor. *See* Doc. 44-8. Indeed, all of IPFS's customers that Carrillo has successfully taken to her new employer were serviced directly by Carrillo in the last few months of her employment with IPFS. *Id.* Even the most narrow restrictions would result in a finding of Carrillo's breach of contract. Carrillo's only hope is for the Court to completely disregard any of her contractual obligations to IPFS. The

proposed restrictions are supported by Missouri law and by undisputed evidence on the record. Accordingly, the Court should adopt the Restricted List as the manner to enjoin Carrillo from soliciting certain customers in whom IPFS has a protectable interest.

**B.     Public Policy Supports Modifying the Agreement to Protect IPFS from Carrillo's Injurious Conduct Toward IPFS's Customer Relationships.**

An essential term of the Agreement is that Carrillo agreed that she would be restricted from unfairly competing against IPFS once she left her employment. IPFS does not seek to change this essential term, but rather asks the Court to enforce it in a manner that reflects recent developments in Missouri law on "reasonableness" under Missouri Revised Statute § 431.202.1. There is nothing untoward about this request. Nevertheless, Carrillo discourages the Court from modifying the Agreement by claiming it is against public policy for the Court to "rewrite" the terms of an agreement. This argument is directly contradicted by numerous opinions in Missouri case law, which hold that a defendant can be liable for breach and restrictions can be fashioned without any regard to an employment contract's original wording. *See, e.g.*, *Mid-States Paint & Chem. Co. v. Herr*, 746 S.W.2d 613, 616 (Mo. Ct. App. 1988); *Orchard Container Corp. v. Orchard*, 601 S.W.2d 299, 303 (Mo. Ct. App. 1980); *Payroll Advance, Inc. v. Yates*, 270 S.W.3d 428, 437 (Mo. Ct. App. 2008); *see also R. E. Harrington, Inc. v. Frick*, 428 S.W.2d 945, 951 (Mo. Ct. App. 1968) ("the courts of this state . . . have decreed enforcement as against a defendant whose breach occurred within an area in which restriction would clearly be reasonable, even though the terms of the agreement imposed a larger and unreasonable restraint"). Left with nothing else, Carrillo relies on inapposite case law from other jurisdictions to impose rules and requirements that have been expressly rejected in Missouri.

Public policy, as explained in these Missouri cases, is to protect employers from this exact type of injury by fashioning a remedy that is fair for both parties. The modified Agreement adequately balances the competing interests of IPFS and Carrillo because it is narrowly tailored to

protect IPFS's legitimate business interests while still permitting Carrillo to earn a living and further her career. None of Carrillo's arguments are persuasive and, at the very least, disputed material facts preclude summary judgment in favor of Carrillo.

### III. CONCLUSION

For the reasons stated above, IPFS respectfully requests that this Court deny Carrillo's Motion for Summary Judgment, grant IPFS's Motion for Partial Summary Judgment on the issue of Carrillo's liability for breach of her Agreement, and order immediate injunctive relief enforcing the Agreement, as modified by IPFS's request. Specifically, IPFS seeks a judgment and injunction that Carrillo shall not sell to any of IPFS's clients identified on the Restricted List until June 3, 2015, and for such other and proper relief as it deems just and equitable.

Dated this 15th day of January, 2015.

LATHROP & GAGE LLP

By: */s/ Michael J. Abrams*
Michael J. Abrams
2345 Grand Boulevard, Suite 2200
Kansas City, Missouri 64108
Telephone: 816.292.2000
Facsimile: 816.292.2001

and

Thomas G. Ryan
Howard E. Cole
Jennifer K. Hostetler
LEWIS ROCA ROTHGERBER LLP
3993 Howard Hughes Parkway, Suite 600
Las Vegas, Nevada 89169

*Attorneys for Plaintiff IPFS Corporation*

## **CERTIFICATE OF SERVICE**

The undersigned hereby certifies that she caused a copy of the foregoing pleading to be filed and served on the 15th day of January 2015, upon the following counsel of record via the Court's electronic filing system:

> Timothy R. Mulliner
> Matthew D. Lamb
> Ballard Spahr LLP
> 100 North City Parkway, Suite 1750
> Las Vegas, Nevada 89106
> Telephone: (702) 471-7000
> Facsimile: (702) 471-7070
> MullinerT@ballardspahr.com
> LambM@ballardspahr.com
>
> John G. Kerkorian
> Ballard Spahr LLP
> 1 East Washington Street, Suite 2300
> Phoenix, Arizona 85004-2555
> Telephone: (602) 798-5400
> Facsimile: (602) 798-5595
> KerkorianJ@ballardspahr.com
>
> *Attorneys for Defendant Lorraine Carrillo*

        */s/ Jan Ruggles*
        An employee of Lathrop & Gage LLP

**Lathrop & Gage LLP**
2345 Grand Boulevard, Suite 2200
Kansas City, Missouri 64108-2618

23317960v1