UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| IPFS CORPORATION, a Missouri Corporation, <br><br> Plaintiff, <br><br> vs. <br><br> LORRAINE CARRILLO, an individual, <br><br> Defendant. | Case No.: 2:14-cv-00509-GMN-NJK <br><br> **ORDER** |

Pending before the Court is the Motion for Partial Summary Judgment (ECF No. 44) filed by Plaintiff IPFS Corporation ("Plaintiff" or "IPFS"), and the Motion for Summary Judgement (ECF No. 60) filed by Defendant Lorraine Carrillo ("Defendant"). Both motions have been fully briefed.

**I.    BACKGROUND**

Defendant is a former employee of Plaintiff, a premium financing company. (Compl. ¶ 6, ECF No. 1). In 1993, she entered into a non-compete agreement (the "Agreement") with Plaintiff, which prohibited her from doing business with Plaintiff's customers, both during her employment and for eighteen months thereafter. (*Id.* ¶¶ 7, 9). Defendant resigned her Sales Executive position in January 23, 2014, after more than twenty-one years with Plaintiff. (*Id.* ¶¶ 6, 10). She is currently an employee of Premium Assignment Corporation ("PAC"), one of Plaintiff's competitors. (*Id.* ¶ 2).

Plaintiff alleges that, shortly after Defendant's resignation, Defendant began soliciting at least three of Plaintiff's current Nevada-based clients, both of whom she had serviced while in

Plaintiff's employ. (*Id.* ¶¶ 11–13). Defendant allegedly continued doing business with these clients, despite written correspondence from Plaintiff ordering her to cease and desist, as well as assurances from PAC to the contrary. (*Id.* ¶¶ 14–15).

Plaintiff's Complaint alleges breach of contract and states that Plaintiff will incur "irreparable harm in the form of lost customer goodwill and lost business" if Defendant is allowed to continue her competitive activities. (*Id.* ¶¶ 17–24). Plaintiff accordingly filed an Emergency Motion for Temporary Restraining Order. (ECF No. 2). The Court denied this motion because Plaintiff failed to show that the temporary restraining order should have been granted without notice to Defendant; specifically, Plaintiff failed to mention the requirements of Federal Rule of Civil Procedure 65(b). (Order Denying Pl.'s Mot. for TRO, ECF No. 7). Plaintiff subsequently filed a Motion for Preliminary Injunction (ECF No. 10), which the Court denied (ECF No. 37).

## II. **LEGAL STANDARD**

The Federal Rules of Civil Procedure provide for summary adjudication when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Material facts are those that may affect the outcome of the case. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute as to a material fact is genuine if there is sufficient evidence for a reasonable jury to return a verdict for the nonmoving party. *See id.* "Summary judgment is inappropriate if reasonable jurors, drawing all inferences in favor of the nonmoving party, could return a verdict in the nonmoving party's favor." *Diaz v. Eagle Produce Ltd. P'ship*, 521 F.3d 1201, 1207 (9th Cir. 2008) (citing *United States v. Shumway*, 199 F.3d 1093, 1103–04 (9th Cir. 1999)). A principal purpose of summary judgment is "to isolate and dispose of factually unsupported

claims." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986).

In determining summary judgment, a court applies a burden-shifting analysis. "When the party moving for summary judgment would bear the burden of proof at trial, it must come forward with evidence which would entitle it to a directed verdict if the evidence went uncontroverted at trial. In such a case, the moving party has the initial burden of establishing the absence of a genuine issue of fact on each issue material to its case." *C.A.R. Transp. Brokerage Co. v. Darden Rests., Inc.*, 213 F.3d 474, 480 (9th Cir. 2000) (citations omitted). In contrast, when the nonmoving party bears the burden of proving the claim or defense, the moving party can meet its burden in two ways: (1) by presenting evidence to negate an essential element of the nonmoving party's case; or (2) by demonstrating that the nonmoving party failed to make a showing sufficient to establish an element essential to that party's case on which that party will bear the burden of proof at trial. *See Celotex Corp.*, 477 U.S. at 323–24. If the moving party fails to meet its initial burden, summary judgment must be denied and the court need not consider the nonmoving party's evidence. *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 159–60 (1970).

If the moving party satisfies its initial burden, the burden then shifts to the opposing party to establish that a genuine issue of material fact exists. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). To establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor. It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 631 (9th Cir. 1987). In other words, the nonmoving party cannot avoid summary judgment by relying solely on conclusory allegations that are unsupported by factual data. *See Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989). Instead, the opposition must go beyond the assertions and allegations of the pleadings and set forth specific facts by producing

competent evidence that shows a genuine issue for trial. *See Celotex Corp.*, 477 U.S. at 324.

At summary judgment, a court's function is not to weigh the evidence and determine the truth but to determine whether there is a genuine issue for trial. *See Anderson*, 477 U.S. at 249. The evidence of the nonmovant is "to be believed, and all justifiable inferences are to be drawn in his favor." *Id*. at 255. But if the evidence of the nonmoving party is merely colorable or is not significantly probative, summary judgment may be granted. *See id.* at 249–50.

## III. DISCUSSION

In its Motion for Partial Summary Judgment, Plaintiff seeks summary judgment as to "[Defendant]'s liability and to enjoin [Defendant] from further violation of her contractual duties." (Pl.'s Mot. for Par. Summ. J. 4:28–5:2, ECF No. 44). Conversely, in her Motion for Summary Judgment, Defendant contends that summary judgment should be granted in her favor and against Plaintiff on each of its claim on the following bases: (1) "IPFS cannot demonstrate it has a protectable interest in any of the accounts on the Restricted List;" (2) "[e]ven if IPFS had a legally protectable interest in some unspecified accounts on the Restricted List, there is no evidence on which the Court can modify the Agreement so that it is 'no more restrictive than necessary to protect the legitimate interests' of IPFS as required under Missouri law;" and (3) "[a]s a matter of law and policy, the Court should decline to modify the Agreement." (Def.'s Mot. for Summ. J. 2:7–16, ECF No. 60).

### A. Modification of the Agreement

In Missouri, "[b]ecause non-compete agreements are considered to be in restraint of trade, they are presumptively void and enforceable only to the extent that they are demonstrably reasonable." *Orchard Container Corp. v. Orchard*, 601 S.W.2d 299, 303 (Mo. Ct. App. 1980). That is, they must be "no more restrictive than is necessary to protect the legitimate interests of the employer" and "narrowly tailored geographically and temporally." *Healthcare Servs. of the Ozarks, Inc. v. Copeland*, 198 S.W.3d 604, 610 (Mo. 2006).

The reasonableness of the non-compete agreement's geographical limits "depends upon whether the employer possessed a stock of customers located co-extensively with those geographical limits." *Orchard*, 601 S.W.2d at 303 (reducing agreement's geographical limit from 200 to 125 miles, as employer had customers only within the smaller radius); *see also Cont'l Research Corp. v. Scholz*, 595 S.W.2d 396, 400 (Mo. Ct. App. 1980) (employer had no protectable interests in customer contacts outside employee's assigned territory). Missouri courts have enforced customer non-solicitation clauses lacking geographical limits only "when other limitations to the prohibited conduct exist or when the employee had significant contact with a substantial number of the employer's customers." *Whelan Sec. Co. v. Kennebrew*, 379 S.W.3d 835, 842 (Mo. 2012). Similarly, in *Systematic Business Services, Inc. v. Bratten*, the Missouri Court of Appeals enforced a national company's non-solicitation clause prohibiting an employee from contacting all of its customers, because the employee had "substantial and continuing contact" with customers throughout the nation. 162 S.W.3d 41, 51 (Mo. Ct. App. 2005); *see also Nat'l Starch & Chem. Corp. v. Newman*, 577 S.W.2d 99, 104–05 (Mo. Ct. App. 1978) (enforcing a customer non-solicitation clause limited to customers with whom employee and salesmen under his supervision dealt).

Under Missouri law, the Agreement here is too broad to enforce as written because it goes beyond simply protecting Plaintiff's customer contacts and instead places unreasonable limitations on Defendant's ability to work in her field. The Agreement states that Defendant may not

> directly or indirectly, in any manner or capacity, engage in or have a financial interest in any business carried on by the Employer during the period of Employee's employment, if such business at any time contacts or solicits or attempts to contact or solicit any Customer or Potential Customer with whom Employer is doing business at the time of termination of Employee's employment.

(Compl. Ex. A, at 2). The Agreement defines "Potential Customer" as "a Customer which the

Employer actively solicits through personal contact or direct correspondence prior to or during Employee's association with the Employer." (*Id.*). Because of this expansive definition and the absence of geographical limitations, the Agreement effectively prevents Defendant from working for any premium financing company anywhere in the world to whom Plaintiff has sent as much as a letter.

Recognizing the overbroad nature of the Agreement, Plaintiff requests to limit the application of the Agreement only to a "Restricted List" of 103 of Plaintiff's current customers that Defendant serviced during the last 24 months of her employment. (Pl.'s Mot. for Par. Summ. J. 9:3–10). The Missouri Court of Appeals "recognize[s] that an unreasonable restriction against competition in a contract may be modified and enforced to the extent that it is reasonable, regardless of the covenant's form of wording." *Mid-States Paint & Chem. Co. v. Herr*, 746 S.W.2d 613, 616 (Mo. Ct. App. 1988); *see also Whelan*, 379 S.W.3d at 847 (modifying overbroad customer/potential customer non-solicitation clauses to make non-compete agreement enforceable).

Missouri courts have recognized that "[a]n employer has a legitimate interest in customer contacts to the extent it seeks to protect against 'the influence an employee acquires over his employer's customers through personal contact.'" *Whelan*, 379 S.W.3d at 842 (quoting *Copeland*, 198 S.W.3d at 610). In determining the reasonableness of a restriction regarding customer contacts, "the quality, frequency, and duration of employee's exposure to the customers is of crucial importance." *Cont'l Research*, 595 S.W.2d at 401.

Here, Plaintiff seeks a modification of the Agreement, which would prevent Defendant from soliciting the same customers Plaintiff paid Defendant to solicit during the last 24 months of her employment. (Pl.'s Mot. for Par. Summ. J. 9:4–7). On the other hand, Defendant asserts that "IPFS coded all of its clients in Las Vegas to [Defendant]," and "IPFS created the Restricted List by printing every agency which was 'coded' (i.e., all of IPFS's clients in

Southern Nevada) which had obtained premium financing from IPFS during the final two years of [Defendant]'s employment." (Def.'s Mot. for Summ. J. 4:26–5:4).  Defendant maintains that Plaintiff "made no assessment of the 'quality, frequency or duration' of [Defendant]'s contacts with the customers on the list." (*Id.* 8:26–9:1 (quoting *Cont'l Research*, 595 S.W.2d at 400)).  However, when asked at her deposition whether there were any agencies on the Restricted List that she did not have contact with while employed at IPFS, Defendant identified only 5 customers out of the 103 customers on the Restricted List. (Dep. Tr. of Lorraine Carrillo 90:12–93:16, ECF No. 57-2 (listing JPG Insurance, Century One, O'Keefe Insurance, Bodenstein Insurance, and Bill Mitchell Insurance)).  Moreover, Plaintiff maintains that, "[a]lthough [Defendant] was paid to service these customers and received compensation for their sales, IPFS does not oppose striking these 5 customers from the Restricted List." (Pl.'s Reply 9:19–23, ECF No. 57).

Defendant also asserts that "IPFS arbitrarily selected a 24-month 'look-back' period in compiling the Restricted List, and there is no evidence on which the Court could find that period, or a lesser one, is appropriate." (Def.'s Mot. for Summ. J. 10:26–28).  However, Plaintiff maintains that "IPFS considers the customers identified on the Restricted List active because many agents will encounter the opportunity to facilitate premium financing only occasionally, meaning, these customers may need IPFS's services once every two or three years." (Dec. of Michael Gallagher ¶ 34, ECF No. 44-6).  Moreover, in her deposition, Rachel Yunk, Vice President NW Regional Manager for IPFS, testified that IPFS uses the last 24 months to identify a sales executive's current book of business:

> Q. Did you consider including a restricted list that contained only those customers to whom Carrillo sold during the last six months of her employment or 12 months or some other shorter time period other than 24?
> A. No.
> Q. Why not?

> A. Because we look at somebody who had given us at least one piece of business in the last 24 months as an active agent. So they would be part of her book that she should be servicing.
> Q. Okay. And when you say we look at that as an active agent, is that -- why is it that period, why is it not shorter or longer?
> A. Because many agencies only write a few accounts a year, and -- I mean, it's just the business is very different with regards to some agencies when they process business, so they're just considered an active agent for that time period.

(Dep. Tr. of Rachel Yunk 68:14–69:7, ECF No. 57-1).

Based on the foregoing, the Court finds that modifying the Agreement to prevent Defendant from soliciting or accepting sales from the 98 customers she had contact with during the last 24 months of her employment with IPFS is demonstrably reasonable, as it is no more restrictive than is necessary to protect the legitimate interests of Plaintiff.

Moreover, the Court finds that an 18-month restriction period, starting from the date of Defendant's termination with IPFS, is reasonable. Plaintiff explains that the business reason behind the 18-month period "is that it would give [IPFS] enough time to solidify those relationships with replacement people." (Dep. Tr. of Michael Gallagher 126:9–11, ECF No. 55-2). Moreover, Missouri courts have upheld the same or longer restrictions. *See USA Chem, Inc. v. Lewis*, 557 S.W.2d 15, 24 (Mo. Ct. App. 1977) (upholding 18-month restriction as reasonable to protect employer's legitimate interests); *Prop. Tax Representatives, Inc. v. Chatam*, 891 S.W.2d 153, 158 (Mo. Ct. App. 1995) (upholding two-year non-solicitation restriction). Accordingly, Defendant's Motion for Summary Judgment is denied.

**B.  Defendant's Liability Under the Modified Agreement**

Plaintiff asserts that Defendant's discovery responses and deposition testimony provide undisputed evidence of Defendant's breaching conduct. (Pl.'s Mot. for Summ. J. 9:26–10:5). Under Missouri law, "[a] breach of contract action includes the following essential elements: (1) the existence and terms of a contract; (2) that plaintiff performed or tendered performance

pursuant to the contract; (3) breach of the contract by the defendant; and (4) damages suffered by the plaintiff." *Keveney v. Mo. Military Acad.*, 304 S.W.3d 98, 104 (Mo. 2010).

The parties do not dispute the existence of the Agreement. Moreover, the parties do not dispute that Plaintiff performed pursuant to the Agreement, which provides that IPFS "has engaged or proposes to engage Employee to perform certain services for Employer and Employer wishes to maintain secret certain information about Employer's business and to preserve relationships with persons with whom the Employer does business." (*See* Agreement, ECF No. 44-3).

Moreover, in her Supplement to Objections and Responses to Plaintiff's First Interrogatories to Lorraine Carrillo, Defendant admitted to having communicated in some manner with 34 customers identified on the Restricted List. (*See* ECF No. 44-7). Of the 34 customers identified, 33 customers are included in the 98 restricted customers under the modified Agreement. Furthermore, in her deposition, Defendant identified 13 customers that she has procured business with during her employment with PAC. (Dep. Tr. of Lorraine Carrillo 31:10–32:4, ECF No. 44-2). Each of the 13 customers are included in the 98 restricted customers under the modified Agreement. Defendant has not set forth any evidence creating a genuine issue of material fact as to whether her sales to these customers breached the terms of the Agreement as modified by the Court. Accordingly, the Court finds that the record evidence conclusively establishes Defendant's breach of the Agreement as modified by the Court. However, although the Court grants Plaintiff summary judgment as to Defendant's liability on its breach of contract claim, the damages issue will proceed to trial.

**C. Injunctive Relief**

Plaintiff requests that, upon granting its Motion for Partial Summary Judgment, the Court immediately issue an injunction preventing Defendant from soliciting or accepting sales from the 98 restricted customers under the modified Agreement. (Pl.'s Mot. for Summ. J.

11:11–28). However, Defendant asserts that the Court should deny Plaintiff's request for injunctive relief because Plaintiff "fails to demonstrate that its alleged injury is irreparable." (Def.'s Response 27:20–28:3).

Under Missouri law, "[a]n injunction should be granted against a former employee when the covenant is lawful and the employer shows a legitimate business interest at stake, unless there is a substantial reason to relieve the former employee of its 'voluntary obligation.'" *Paradise v. Midwest Asphalt Coatings, Inc.*, 316 S.W.3d 327, 329 (Mo. Ct. App. 2010) (quoting *Osage Glass, Inc. v. Donovan*, 693 S.W.2d 71, 75 (Mo. 1985)). Moreover, once a court modifies a non-compete agreement to be enforceable, finds that the employer has a protectable interest in its customer contacts, and finds that the former employee has the opportunity to use those contacts, it is required to enter an injunction. *Id.*

Accordingly, the Court enjoins Defendant from soliciting or accepting sales from the 98 restricted customers under the modified Agreement until the obligations under the modified Agreement expire on July 23, 2015.

## IV.   CONCLUSION

**IT IS HEREBY ORDERED** that Defendant's Motion for Summary Judgment (ECF No. 60) is **DENIED**.

**IT IS FURTHER ORDERED** that Plaintiff's Motion for Partial Summary Judgment (ECF No. 44) is **GRANTED**. Accordingly, the Court modifies the Agreement to prevent Defendant for a period of 18 months from the date of Defendant's employment termination with IPFS from soliciting or accepting sales from the 98 customers she had contact with during the last 24 months of her employment. Additionally, the Court finds that the record evidence conclusively establishes Defendant's breach of the Agreement as modified by the Court. However, although the Court grants Plaintiff summary judgment as to Defendant's liability on its breach of contract claim, the damages issue will proceed to trial. Furthermore, the Court

enjoins Defendant from soliciting or accepting sales from the 98 restricted customers under the modified Agreement until the obligations under the modified Agreement expire on July 23, 2015.

**DATED** this 8th day of July, 2015.

_____
Gloria M. Navarro, Chief Judge
United States District Judge