HOWARD E. COLE (NV Bar No. 4950)
hcole@lrrlaw.com
LEWIS ROCA ROTHGERBER CHRISTIE LLP
3993 Howard Hughes Parkway, Suite 600
Las Vegas, NV 89169
(702) 949-8315 tel
(702) 949-8379 fax

MICHAEL J. ABRAMS
mabrams@lathropgage.com
KATE O'HARA GASPER
kgasper@lathropgage.com
LATHROP & GAGE LLP
2345 Grand Boulevard, Suite 2200
Kansas City, MO 64108
(816) 292-2000 tel
(816) 292-2001 fax
*Pro Hac Vice* Admitted

*Attorneys For Plaintiff*
*IPFS Corporation*

**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| IPFS CORPORATION, a Missouri Corporation,<br><br>    Plaintiff,<br><br>v.<br><br>LORRAINE CARRILLO, an individual,<br><br>    Defendant. | Case No. 2:14-cv-00509-GMN-NJK<br><br>**PLAINTIFF'S TRIAL BRIEF** |

Plaintiff IPFS Corporation ("IPFS"), through its counsel, respectfully submits its Trial Brief in preparation of the parties' February 8, 2016 bench trial to determine IPFS's damages caused by defendant Lorraine Carrillo's established breach of contract.

25141812v1

## FACTUAL AND PROCEDURAL OVERVIEW

IPFS is a premium finance company that provides specialized lending for businesses and individuals to pay for insurance coverage. The premium finance loan enables the policy holder to spread payments over the course of the policy instead of paying the entire premium up front. Insurance agents engage IPFS to offer financing to their policy holders. The relationship between the insurance agents and IPFS's sales representatives is critical to IPFS's success. Indeed, these customer relationships form the backbone of IPFS's business model.

Carrillo was employed by IPFS for more than 21 years. During her tenure, Carrillo was responsible for marketing IPFS's premium financing products and services to insurance agents in Nevada, and parts of Arizona and Utah. In order to protect IPFS's business interests, in June of 1993, IPFS and Carrillo entered into an Employment Agreement ("Agreement"). The Agreement expressly states that Carrillo,

> shall not, during the period of Employee's employment with Employer and for a period of eighteen (18) months thereafter, directly or indirectly, in any manner or capacity, engage in or have a financial interest in any business carried on by the Employer during the period of Employee's employment, if such business at any time contacts or solicits or attempts to contact or solicit any Customer or Potential Customer with whom Employer is doing business at the time of termination of Employee's employment.

(*See* Ex. A of Complaint).

On January 23, 2014, Carrillo terminated her employment with IPFS to begin employment with Premium Assignment Corporation ("PAC"), one of IPFS's competitors. Soon thereafter, Carrillo set about soliciting IPFS's customers. IPFS initiated this action on April 3, 2014 and asserted claims for injunctive relief and damages. Doc. 1. Although the Agreement prohibits Carrillo from employment with any competitor, IPFS's Complaint sought to enforce the Agreement more narrowly to merely prohibit Carrillo from soliciting Las Vegas customers with

25141812v1 - 2 -

whom she dealt while at IPFS. *Id.* IPFS identified these 103[1] customers on a proposed "Restricted List" and attached it to the Complaint. *Id.* On October 27, 2015, IPFS moved for partial summary judgment on the issue of liability and again requested injunctive relief. Doc. 44. The Court granted IPFS's motion in its entirety, granting the injunction and finding that the "record evidence conclusively establishes Defendant's breach of the Agreement as modified by the Court." Doc. 85, p. 9. The Court noted that Carrillo admitted to having communicated in some manner with 33 customers identified on the Restricted List, and also admitted to successfully procuring business from 13 customers on the Restricted List. *Id.* (citing Dep. Tr. of Lorraine Carrillo 31:10–32:4, ECF No. 44-2).

However, by the time the Court entered its injunction, Carrillo had been actively soliciting IPFS's customers for nearly eighteen months, thereby causing significant damage to IPFS's customer relationships. By July 2015, Carrillo had successfully procured business from 19 customers on the Restricted List. Notably, Carrillo's new employer admitted during his deposition that, but for Carrillo's efforts on its behalf, PAC would not have obtained that book of business. Now, pursuant to the Court's summary judgment order, the sole issue at trial is to determine the amount of damages Carrillo should pay IPFS to compensate it for her breach of contract.

## MISSOURI LAW ON RECOVERY OF LOST PROFITS

The Agreement includes a Missouri choice of law provision that the Court has already determined to apply. Doc. 37, p. 4. Under Missouri law, the proper measure of damages in a breach of a non-solicitation agreement is the recovery of lost profits. *See, e.g.*, *Orchard Container Corp. v. Orchard*, 601 S.W.2d 299, 305 (Mo. Ct. App. 1980). The term "loss of profits" refers to the amount of net profits the plaintiff would have realized had its clients not

---

[1] IPFS did not oppose omitting from the Restricted List the 5 customers Carrillo claimed she never solicited. The final number of customers on the Restricted List was 98.

25141812v1
- 3 -

been lost as a result of the defendant's actions. *Ameristar Jet Charter, Inc. v. Dodson International Parts, Inc.*, 155 S.W.3d 50, 54 (Mo. banc 2005). Although an estimate of anticipated profits must rest on more than mere speculation, uncertainty as to the amount of profits that otherwise would have been made does not prevent recovery. *Id.* at 54–55.

"[O]nce the plaintiff has established the *fact* of lost profits, to establish the *amount* of lost profit with reasonable certainty, 'all that is required by Missouri courts' is that it be supported by the best evidence available." *BMK Corp. v. Clayton Corp.*, 226 S.W.3d 179, 196 (Mo. Ct. App. 2007) (quoting *Refrigeration Industries, Inc. v. Nemmers,* 880 S.W.2d 912, 920 (Mo. Ct. App. 1994) (emphasis in original)); *see also Smith Moore & Co. v. J.L. Mason Realty & Inv., Inc.,* 817 S.W.2d 530, 534 (Mo. Ct. App. 1991) (reasoning that "the requirement that damages be shown with certainty is on the fact of damages and not on the particular amount.") A plaintiff produces the best evidence available when he or she produces "all relevant facts tending to show the extent of damages and one is not excused for a breach of contract resulting in damages simply because those damages may not be established with certainty." 817 S.W.2d at 534.

To recover lost profit damages caused to an established business, like IPFS, the plaintiff must demonstrate "proof [of] the income and expenses of the business for a reasonable anterior period, with a consequent establishing of the net profits during the previous period." *See Midwest Coal, LLC ex rel. Stanton v. Cabanas*, 378 S.W.3d 367, 370 (Mo. Ct. App. 2012). In other words, at trial IPFS will demonstrate its past profitability from the damaged customer relationships in order to reasonably project those profits into the future.

Significantly, a "business owner's testimonial evidence is sufficient to provide the trier of fact with a rational basis for estimating damages to the plaintiff, including lost profits." *BMK Corp. v. Clayton Corp.*, 226 S.W.3d 179. This is specifically permitted by Federal Rule of Evidence 701, which does not require expert testimony to present evidence of projected profits

because business officers and "owners may present lay testimony regarding their company's profits, value, and damages." *See Impact Mktg. Int'l, LLC v. Big O Tires, LLC*, No. 2:10:CV-01809-MMD, 2012 WL 2092815, at *4 (D. Nev. June 11, 2012). Finally, once the plaintiff has put forth the best evidence available, the amount of damages is a question for the fact finder. *BMK*, 226 S.W.3d at 196.

## IPFS'S DAMAGES

IPFS calculates its damages as a result of Carrillo's breach at $1,032,000. This calculation is illustrated on the attached **Exhibit A.** IPFS calculated its lost profits by quantifying the revenue stream that Carrillo diverted to PAC during the term of her Agreement, taking into account the expenses necessary to create that revenue stream and the costs not incurred because of the loss of the revenue. IPFS's methodology takes into consideration and quantifies the risks involved in projecting these lost profits, as well as the present market value of this type of profit stream.

But for Carrillo's breach of contract, IPFS could have reasonably expected its profits on these customer relationships to continue for at least another 8 years. The 8 year projection is supported by the long history these customers had with IPFS and IPFS's past successes with transitioning accounts to new sales representatives. IPFS has recently undergone several mergers and acquisitions where it was necessary to determine the book value of their customer relationships, and this was done by projecting the profits on those accounts between 8 and 20 years. In effect, IPFS has already "put their money where their mouth is" by projecting out customer relationships more than 8 years in the context of its core business, not simply for the purposes of litigation. Here, IPFS employed its most conservative estimate to project its lost profits. Carrillo transferred an extremely valuable book of business to IPFS's competitor in violation of her Agreement and now she must compensate IPFS accordingly.

# CONCLUSION

In sum, the February 8, 2016 trial will be a straightforward proceeding to determine the adequate amount of damages Carrillo must pay IPFS in order to compensate IPFS for Carrillo's established breach of contract. IPFS's trial witnesses will demonstrate with reasonable certainty that IPFS suffered damages as a result of the breach and will provide a rational basis to award IPFS $1,032,000.

Dated this 28th day of January, 2016.   LATHROP & GAGE LLP

By: */s/ Michael J. Abrams*
    Michael J. Abrams
    Kate O'Hara Gasper
    2345 Grand Boulevard, Suite 2200
    Kansas City, Missouri 64108
    Telephone: 816.292.2000
    Facsimile: 816.292.2001

and

Howard E. Cole
LEWIS ROCA ROTHGERBER CHRISTIE LLP
3993 Howard Hughes Parkway, Suite 600
Las Vegas, Nevada 89169

*Attorneys for Plaintiff IPFS Corporation*

25141812v1

- 6 -

# **CERTIFICATE OF SERVICE**

The undersigned hereby certifies that she caused a copy of the foregoing pleading to be filed and served on the 28th day of January 2016, upon the following counsel of record via the Court's electronic filing system:

Matthew D. Lamb
Ballard Spahr LLP
1909 K Street, NW
12th Floor
Washington, DC 20006-1157
Telephone:  (202) 661-7617
Facsimile:   (202) 661-2299
LambM@ballardspahr.com

John G. Kerkorian
Ballard Spahr LLP
1 East Washington Street, Suite 2300
Phoenix, Arizona 85004-2555
Telephone: (602) 798-5400
Facsimile: (602) 798-5595
KerkorianJ@ballardspahr.com

*Attorneys for Defendant Lorraine Carrillo*

　　　　　　　　　　　　　　　　　　　*/s/ Jan Ruggles*
　　　　　　　　　　　　　　　　　　　An employee of Lathrop & Gage LLP

**Lathrop & Gage LLP**
**2345 Grand Boulevard, Suite 2200**
**Kansas City, Missouri  64108-2618**

25141812v1

- 7 -